1

2                                              SEND
                                               ENTER
3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9

10                                        O

11   WANDA A. MIGLIACCIO,            )    No. EDCV 05-0651-RC
                                     )
12             Plaintiff,            )
                                     )    OPINION AND ORDER
13        v.                         )
                                     )
14   MICHAEL J. ASTRUE,[1]           )
     Commissioner of Social Security, )
15                                   )
               Defendant.            )
16   _____)

17

18        Plaintiff Wanda A. Migliaccio filed a complaint on July 18, 2005,

19   seeking review of the Commissioner's decision denying her application

20   for disability benefits.  The Commissioner answered the complaint on

21   November 30, 2005, and the parties filed a joint stipulation on

22   January 26, 2006.

23   //

24   //

25   //

26   _____

27        [1]  Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue,
     Commissioner of the Social Security Administration, is
28   substituted as the defendant.

**BACKGROUND**

**I**

On May 5, 2003, plaintiff applied for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act ("the Act"), 42 U.S.C. § 1382(a), claiming an inability to work since July 22, 2001, due to major gynecological problems and extreme pain. Certified Administrative Record ("A.R.") 56-59, 65. The plaintiff's application was denied initially on August 8, 2003, and denied again on January 23, 2004, following reconsideration. A.R. 22-30. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge David M. Ganly ("the ALJ") on January 31, 2005. A.R. 31-32, 327-80. On February 25, 2005, the ALJ issued a decision finding plaintiff is not disabled. A.R. 10-17. The plaintiff appealed this decision to the Appeals Council, which denied review on June 16, 2005. A.R. 5-9.

**II**

The plaintiff, who was born on October 28, 1960, is currently 46 years old. A.R. 56, 62-63, 232. She has a ninth-grade education, has received training as a veterinary assistant, and has previously worked as a general office worker, a waitress, a rental agent, a clerk, a cashier, and an assistant manager. A.R. 66, 71, 77-84, 366.

On January 21, 1997, G. Sunny Uppal, M.D., examined plaintiff and diagnosed her with discogenic back pain. A.R. 109-10.[2] Lumbar spine

---

[2] Although plaintiff has both physical and mental complaints, plaintiff does not challenge the ALJ's assessment of her mental condition; therefore, the Court will limit its

1  x-rays revealed a collapse of the L4-5 disc space.  A.R. 110.

2

3      A lumbar spine MRI taken April 29, 1997, revealed a loss of

4  lumbar lordosis,[3] probable transitional vertebra with asymmetric

5  development at the lumbosacral junction, degenerative disc disease and

6  spondylosis[4] at L4-L5 with anterolisthesis of L5 in relationship to

7  L4, resulting in contouring of the lateral recesses and neural

8  foramina but without measurable soft disc protrusion beyond the bony

9  confines, and bilateral degenerative facet changes at L4-L5 and on the

10  right at L5-S1.  A.R. 322.

11

12      On September 30, 1997, Thomas T. Haider, M.D., plaintiff's

13  treating physician, initially examined plaintiff and diagnosed her

14  with severe degenerative disc and facet disease at L5-S1, disc

15  dessication at L5-S1 and mostly L3-L4, and slight facet disease at L5-

16  S1.[5]  A.R. 219-24.  Lumbar spine x-rays showed severe disc collapse

17  and facet disease at L4-L5.  A.R. 222.  A lumbar spine MRI showed

18  severe disc collapse and facet disease at L4-L5, slight facet disease

19

20  ─────────────────────

discussion to plaintiff's physical condition.

21
       [3]  Lordosis is "the anterior concavity in the curvature of
22  the lumbar and cervical spine as viewed from the side."
   Dorland's Illustrated Medical Dictionary at 1027.
23
       [4]  Spondylosis is "a general term for degenerative changes
24  due to osteoarthritis."  Id. at 1684.

25
       [5]  Plaintiff's attorney did not provide the ALJ with all of
26  Dr. Haider's records, including "probably 100 pages of monthly
   visits . . . because [he] thought there was plenty there
27  already."  A.R. 330.  The Court, however, would have found these
   records helpful, and opines that probably the ALJ and the
28  Commissioner also would have liked to have seen them.

1   at L5-S1, severe disc dessication at L3-L4, and slight disc
2   dessication at L5-S1.  Id.  Dr. Haider prescribed Vicodin[6] to
3   plaintiff, referred her for physical therapy, and continued her on
4   temporary disability.  A.R. 223.

6       On July 21, 1998, Dr. Haider performed surgery on plaintiff,
7   consisting of decompression, including a midline laminectomy,[7] a
8   medial facetectomy,[8] and foraminotomy[9] for L4-L5 nerve roots
9   bilaterally, posterior spinal fusion L4 through S1, and a right iliac
10  crest bone graft.  A.R. 310-12.  On November 16, 1999, Dr. Haider
11  performed additional surgery on plaintiff to remove the spinal fusion
12  hardware.  A.R. 307-08.  A lumbar spine MRI taken May 8, 2000, showed
13  posterior bony fusion at the L4-L5 and L5-S1 levels, severe
14  degenerative disc disease at L4-L5, and mild degenerative changes at
15  L3-L4, with no evidence of disc protrusion or spinal stenosis.[10]  A.R.
16  305.

---

[6]   Vicodin is used "for the relief of moderate to moderately
severe pain."  The PDR Family Guide to Prescription Drugs, 723
(8th ed. 2000).

[7]   Laminectomy is the "excision of the posterior arch of a
vertebra."  Dorland's Illustrated Medical Dictionary at 960.

[8]   Facetectomy is the "excision of the articular facet of a
vertebra."  Id. at 642.

[9]   Foraminotomy is "the operation of removing the roof of
intervertebral foramina, done for the relief of nerve root
compression."  Id. at 698.

[10]   Spinal stenosis is "narrowing of the vertebral canal,
nerve root canals, or intervertebral foramina of the lumbar spine
caused by encroachment of the bone upon the space; symptoms are
caused by compression of the cauda equina and include pain,
paresthesias, and neurogenic claudication."  Dorland's
Illustrated Medical Dictionary at 1698.

On February 4, 2002, plaintiff was examined by Dr. Haider's associate, Phillip K. Kay, M.D., who noted plaintiff remains quite symptomatic in her low back and refilled plaintiff's prescription for Norco.[11]  A.R. 217.

On September 16, 2002, Dr. Haider noted there was no sign of fusion fracture on lumbar spine x-rays.  A.R. 208.  However, lumbar spine x-rays taken May 20, 2003, showed the development of degenerative scoliosis[12] above the fusion level.  A.R. 199.  On June 17, 2003, Dr. Haider opined plaintiff should be restricted to light work with no prolonged weightbearing or prolonged sitting.[13]  A.R. 198-99.

On March 2, 2004, Dr. Haider reviewed a recent MRI scan, which showed severe disc desiccation and moderate central stenosis at L3-L4.

---

[11]  Norco, a combination of acetaminophen and hydrocodone, "is used to relieve moderate to moderately severe pain."  Medline Plus, http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601006.html (last visited March 19, 2007).

[12]  Scoliosis is "an appreciable lateral deviation in the normally straight vertical line of the spine[,]" which can be either to the left (levoscoliosis) or to the right (dextroscoliosis).  Dorland's Illustrated Medical Dictionary at 488, 987, 1612.

[13]  Dr. Haider evaluated plaintiff for workers' compensation purposes.  Under the version of California's workers' compensation guidelines then in effect, light work meant the individual "can do work in a standing or walking position, with a minimum of demands for physical effort."  Schedule for Rating Permanent Disabilities, Spine and Torso Guidelines, 2-15 (Labor Code of California, April 1997).  The Schedule for Rating Permanent Disabilities has been revised, effective January 2005.

1  A.R. 290-91.  On May 24, 2004, Dr. Haider placed plaintiff on

2  temporary total disability due to a deterioration in her condition,

3  and plaintiff remained on disability at the time of Dr. Haider's most

4  recent evaluation on December 2, 2004.  A.R. 259-60, 278-79.

5

6       Between August 6, 1996, and June 24, 2004, Anita I. Lenz, M.D.,

7  generally treated plaintiff for her degenerative disc disease and

8  gynecological problems.  A.R. 111-18, 133-83, 323-24.  A pelvic

9  sonogram taken December 14, 2001, showed a right ovarian cyst and

10 heterogeneous uterine echo-texture without definable leiomyoma,[14] A.R.

11 181, and a repeat pelvic sonogram taken July 30, 2002, showed

12 bilateral ovarian cysts.  A.R. 180.

13

14      Between February 24 and April 8, 2003, plaintiff also received

15 treatment from R. Bauman, M.D., a gynecologist at Kaiser Permanente,

16 who diagnosed plaintiff with dysmenorrhea, probably due to

17 endometriosis,[15] and irregularity in the uterus lining probably from

18 endometrial polyps.[16]  A.R. 120-31.  A pelvic ultrasound revealed

19 cysts in both ovaries, which were benign.  A.R. 120, 131.  An

20

21      _____

22      [14]  A leiomyoma, also called a fibroid or fibroid tumor, is
   "a benign tumor derived from smooth muscle, most commonly of the
23 uterus."  Dorland's Illustrated Medical Dictionary at 974.

24      [15]  Endometriosis is "a condition in which tissue containing
   typical endometrial granular and stromal elements occurs
25 aberrantly in various locations in the pelvic cavity or some
   other area of the body."  Dorland's Illustrated Medical
26 Dictionary at 594.

27      [16]  Endometrial polyps are "small, sessile, benign
   projecting masses on the endometrium, composed of an edematous
28 stroma containing cystically dilated glands."  Id. at 1433.

endometrial biopsy taken February 24, 2003, revealed a small endometrial polyp, which was also benign.  A.R. 120, 130.

On January 13, 2004, Rocely Ella-Tamayo, M.D., an internist, examined plaintiff and diagnosed her as status post-back surgery with residual pain and a history of a uterine tumor, and opined plaintiff's prognosis is not good.  A.R. 233-38.  Dr. Ella-Tamayo opined plaintiff can push, pull, lift and carry about 20 pounds occasionally and 10 pounds frequently, stand and walk for 4 hours in an 8-hour work day, occasionally kneel and squat, and her ability to sit is unimpaired.  A.R. 238.

Sami Nafoosi, M.D., testified as a medical expert at the administrative hearing, opining plaintiff has a lumbar spine disorder, resulting in a laminectomy and spinal fusion with continued evidence of degenerative disc disease and spinal stenosis, dysfunctional uterine bleeding and ovarian cysts.  A.R. 331-38, 342-43.  Dr. Nafoosi opined plaintiff can lift 20 pounds occasionally and 10 pounds frequently, can stand and walk for 6 hours out of an 8-hour day, providing she is allowed to change positions briefly for 1-3 minutes each hour, can sit for 8 hours in an 8-hour day, and can occasionally balance, bend, stoop, kneel and squat, but she should not work at heights.  A.R. 334, 343.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability

7

benefits to determine if his findings are supported by substantial
evidence and whether the Commissioner used the proper legal standards
in reaching his decision.  Widmark v. Barnhart, 454 F.3d 1063, 1066
(9th Cir. 2006); Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050,
1052 (9th Cir. 2006).

     The claimant is "disabled" for the purpose of receiving benefits
under the Act if she is unable to engage in any substantial gainful
activity due to an impairment which has lasted, or is expected to
last, for a continuous period of at least twelve months.  42 U.S.C. §
1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
burden of establishing a prima facie case of disability."  Roberts v.
Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
(1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

     The Commissioner has promulgated regulations establishing a five-
step sequential evaluation process for the ALJ to follow in a
disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
must determine whether the claimant is currently engaged in
substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
**Second Step,** the ALJ must determine whether the claimant has a severe
impairment or combination of impairments significantly limiting her
from performing basic work activities.  20 C.F.R. § 416.920(c).  If
so, in the **Third Step**, the ALJ must determine whether the claimant has
an impairment or combination of impairments that meets or equals the
requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §
404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
**Fourth Step**, the ALJ must determine whether the claimant has

1  sufficient residual functional capacity despite the impairment or

2  various limitations to perform her past work.  20 C.F.R. § 416.920(f).

3  If not, in **Step Five**, the burden shifts to the Commissioner to show

4  the claimant can perform other work that exists in significant numbers

5  in the national economy.  20 C.F.R. § 416.920(g).

6

7       Applying the five-step sequential evaluation process, the ALJ

8  found plaintiff has not engaged in substantial gainful activity since

9  the alleged onset of disability.  (Step One).  The ALJ then found

10  plaintiff's "lumbar spine disorder, status post spinal surgery, times

11  two, with spinal stenosis, cysts with dysfunctional uterine bleeding

12  since at least May 2003, and adjustment disorder with depressive mood

13  and psychophysiological reaction to pain are in combination considered

14  'severe'" impairments (Step Two); however, plaintiff does not have an

15  impairment or combination of impairments that meets or equals a

16  Listing.  (Step Three).  The ALJ next determined plaintiff is able to

17  perform her past relevant work as a general office worker, a rental

18  car agent, a counter clerk, a retail store cashier, and a rental car

19  assistant manager; therefore, she is not disabled.  (Step Four).

20

21                                    **IV**

22       A claimant's residual functional capacity ("RFC") is what she can

23  still do despite her physical, mental, nonexertional, and other

24  limitations.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001);

25  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  Here,

26  the ALJ found plaintiff can:

27

28       lift and/or carry twenty pounds occasionally, and ten pounds

1    frequently; stand and/or walk six hours per eight-hour

2    workday with a one to three minute change in position every

3    hour; sit six hours per eight-hour workday with a one to

4    three minute change in position every hour; occasionally

5    climb, balance, stoop, kneel, crouch and/or crawl; and

6    perform moderately complex, four to five step, tasks in a

7    relatively habituated setting not involving . . .

8    hypervigilance, the safety of others, fast paced work or any

9    significant exposure to hazards such as unprotected heights.

10

11   A.R. 16.  The plaintiff contends, however, that the ALJ's RFC finding

12   is not supported by substantial evidence because the ALJ erroneously

13   concluded she is not a credible witness.  The plaintiff is correct.

14

15       At the administrative hearing, plaintiff testified she is unable

16   to work due to constant pain, numbness, tingling and burning in her

17   back, which radiates down her right leg, and pain in her uterus and

18   ovaries, anemia and fatigue.  A.R. 344-48.  On a scale of 1-10, with

19   10 being greatest, plaintiff described her pain as 7.  A.R. 364.  The

20   plaintiff also testified she has ovarian cysts or tumors that

21   sometimes hemorrhage, and that when this happens she is unable to do

22   anything because when she is on her feet, she bleeds more than when

23   resting.  A.R. 344-46, 362.  The plaintiff stated she has been

24   referred for a CT scan of her abdomen to determine whether she has

25   cancer, but she is unable to afford the test since she has no

26   insurance.  A.R. 346-48, 370.  Additionally, plaintiff testified:  she

27   can stand no more than 15-20 minutes at a time and 2 hours in an 8-

28   hour day; she can sit for 1 or 2 hours in an 8-hour day; she can work

by alternating sitting and standing because she has to lie down for 5
hours in an 8-hour day because of her pain, averaging 30 minutes at a
time; she can lift a gallon of milk, but not two gallons without
experiencing back pain; and she can occasionally perform activities
such as bending and stooping.  A.R. 352-61.


        Once a claimant has presented objective evidence that she suffers
from an impairment that could cause pain or other nonexertional
limitations,[17] the ALJ may not discredit the claimant's testimony
"solely because the degree of pain alleged by the claimant is not
supported by objective medical evidence." Bunnell v. Sullivan, 947
F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d
882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's
subjective complaints are not credible, he "'must provide specific,
cogent reasons for the disbelief.'" Greger v. Barnhart, 464 F.3d 968,
972 (9th Cir. 2006) (citations omitted); Moisa, 367 F.3d at 885;
Bunnell, 947 F.2d at 345.  Furthermore, if there is medical evidence
establishing an objective basis for some degree of pain and related
symptoms, and no evidence affirmatively suggesting the claimant is
malingering, the ALJ's reasons for rejecting the claimant's testimony
must be "clear and convincing." Morgan v. Comm'r of the Soc. Sec.
Admin., 169 F.3d 595, 599 (9th Cir. 1999); Greger, 464 F.3d at 972.


        The ALJ found plaintiff is "not totally credible" because

---

        [17]  "While most cases discuss excess pain testimony rather
than excess symptom testimony, rules developed to assure proper
consideration of excess pain apply equally to other medically
related symptoms." Swenson v. Sullivan, 876 F.2d 683, 687-88
(9th Cir. 1989).

"[t]here is no expression of disability from any treating or examining medical source, the closest such statement being that of her treating orthopedic surgeon, who prescribed Norco based on a history of gynecological problems that the record does not support." A.R. 15. This reason is not supported by the record.  Dr. Haider placed plaintiff on total disability due to a deterioration of her condition. See, e.g., A.R. 259-60, 263-65, 278-79, 290-91.  Although recognizing the potential interaction between plaintiff's back and gynecological problems, A.R. 259-60, Dr. Haider specifically found plaintiff was temporarily totally disabled "due solely to her lower back injury – severe disk dessication [with] stenosis [at] L3-L4 [and] not [due] to her pelvic problem." A.R. 266.  Nor does the record show Dr. Haider prescribed Norco to plaintiff for her gynecological problems, which he was not treating, rather than her significant back problems, which he was treating.  See, e.g., A.R. 217 ("The patient is still quite symptomatic in her low back for which she takes Norco.").  Therefore, this is not a clear and convincing reason for rejecting plaintiff's excess pain testimony.  Indeed, even if no treating or examining physician had opined plaintiff is unable to work, this alone is not enough to reject plaintiff's testimony.  See Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986) ("It is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").
//

The ALJ also rejected plaintiff's pain testimony based on her purported lack of medical treatment, stating:

> I have noted [plaintiff's] allegation that she cannot afford medical treatment, but I find it unpersuasive.  She was advised in the notice of initial determination that she could seek public assistance for her medical treatment that I note is available in Riverside, California.  Since there is no indication that she ever attempted to avail herself of such treatment, and instead tried to downplay her gynecological problems at the hearing and emphasize her back problems for which she can obtain medical care through worker's compensation coverage, I can only conclude that the [plaintiff's] allegations in general are at least exaggerated and unreliable.

A.R. 16.  However, plaintiff has received considerable medical treatment, and the ALJ's finding to the contrary is not supported by substantial evidence.

First, the "notice of initial determination" the ALJ refers to merely states:

> Since you are not receiving [SSI] payments, you are not automatically eligible for medical assistance under the Medicaid program.  However, if you need help with medical bills, you still may be eligible for medical assistance. Contact the county welfare department about the eligibility

1    requirements of the State's medical assistance programs.

2

3    A.R. 24.  Second, plaintiff was receiving medical treatment for her

4    back complaints through workers' compensation and was paying for

5    treatment from Dr. Lenz for her gynecological care whenever she was

6    able.  Third, at the administrative hearing, plaintiff was never

7    questioned about whether she had contacted the County to seek medical

8    assistance, and there is absolutely no evidence in the record

9    establishing plaintiff qualifies for any program that would provide

10   her with, for instance, the abdominal CT scan she requires.  Cf.

11   Mendoza v. Apfel, 88 F. Supp. 2d 1108, 1114 (C.D. Cal. 2000) (ALJ

12   improperly found claimant not credible without seeking clarification

13   from claimant regarding issue that was basis of negative credibility

14   determination); Cloutier v. Apfel, 70 F. Supp. 2d 271, 278 (W.D. N.Y.

15   1999) (ALJ failed to provide sufficient basis for rejecting claimant's

16   subjective complaints based, in part, on "ALJ's failure to try to

17   resolve any alleged inconsistencies").  Fourth, contrary to the ALJ's

18   reasoning, plaintiff's testimony cannot be fairly read as downplaying

19   her gynecological problems in favor of her back complaints.  Rather,

20   plaintiff testified she is unable to work because of pain caused by

21   her back problems **and** ovarian cysts and the bleeding associated with

22   her gynecological difficulties.[18]  See A.R. 344-62.

23   ────────────────

24       [18]  Indeed, in response to her attorney's initial question

25   "what is, in your opinion, the biggest problem right now that's
     keeping you from working[,]" plaintiff responded:  "I'd say a

26   combination [of] . . . [t]he uterus, the back, the ovaries."
     A.R. 344.  Nor is this particularly surprising.  Medical expert

27   Dr. Nafoosi testified that both plaintiff's back problems and
     ovarian cysts cause pain in the lower back area and it is

28   "difficult to differentiate which one is pain from the back or

1    Finally, in rejecting plaintiff's pain testimony, the ALJ also

2    stated:  "Indeed, the treating gynecologist notes from 2003 indicate[]

3    rather clearly that the doctors [sic] was amazed that the [plaintiff]

4    indicated she was not working because of her alleged gynecological

5    problems. . . ."  A.R. 15.  This is a blatant misstatement of the

6    record.  Rather, on March 14, 2003, Dr. Bauman stated:  Plaintiff "has

7    been on progesterone 1 cycle from March 1-10.  Here today on March 14

8    states not working!  Advised [plaintiff] this will take a little

9    longer.  Might even take up to 3 month[s] to see affect [sic]."  A.R.

10   123.  As should be clear from the above-quoted statement, plaintiff

11   never informed Dr. Bauman **she** was not working because of her

12   gynecological problems; rather, plaintiff complained that **the hormone**

13   she had recently started taking was not working, and Dr. Bauman

14   advised plaintiff that it would take more time for the hormone to

15   work.  See also A.R. 123 ("CC: med not working.").

16

17   For all these reasons, the ALJ's reasons for discounting

18   plaintiff's credibility were without basis, and "his findings were

19   unsupported by substantial evidence based on the record as a whole."

20   Reddick v. Chater, 157 F.3d 715, 724 (9th Cir. 1998).

21

22                                    **V**

23   This Court has discretion to award disability benefits to a

24   plaintiff when there is no need to remand the case for additional

25   factual findings.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th

26   Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).

27   _____

28   pain from the ovarian cysts."  A.R. 335-36.

Generally, the Court will direct the award of benefits in cases where the record has been fully developed and where further administrative proceedings would serve no useful purpose. McCartey, 298 F.3d at 1076-77; Vertigan, 260 F.3d at 1053.

"[W]here the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if [her] testimony were credited, . . . that testimony is . . . credited as a matter of law." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Reddick, 157 F.3d at 729; see also Benton v. Barnhart, 331 F.3d 1030, 1041 (9th Cir. 2003) (ALJ did not set forth clear and convincing reasons for rejecting claimant's subjective complaints, and "given claimant's obvious serious physical impairments, [her] claim of pain and physical limitations should have been credited.").

Here, plaintiff testified she spends 5 hours out of an 8-hour day lying down, and she lays down for 30 minutes at a time. Vocational expert Sandra Fioretti testified that an individual who would need to take even two unscheduled 30-minute breaks during the work day would not be able to work. A.R. 377. Thus, if plaintiff's testimony is credited, plaintiff cannot perform any work in the national economy and the Commissioner should award disability benefits to plaintiff. See Moisa, 367 F.3d at 886-87 ("The Commissioner, having lost this appeal, should not have another opportunity to show that [plaintiff] is not credible any more than [plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his

//

//

1  credibility.").[19]

2

3                                    **ORDER**

4       IT IS ORDERED that plaintiff's request for relief be granted, and

5  the Commissioner shall award disability benefits to plaintiff under

6  the Supplemental Security Income program, 42 U.S.C. § 1382(a).

7

8  DATE:   March 22, 2007              /s/ Rosalyn M. Chapman
                                       ROSALYN M. CHAPMAN
9                                      UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26       [19]   Having reached this conclusion, it is unnecessary to
27  reach the other issue plaintiff raises.

28  R&R-MDO\05-0651.MDO
    3/22/07